# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| LUIZ DIAZ, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 3:23-cv-236** |
| | ) | **Judge Richardson/Frensley** |
| EMMANUEL AKINYELE, et al., | ) | |
|     Defendants. | ) | |

## <u>REPORT AND RECOMMENDATION</u>

This prisoner 42 U.S.C. § 1983 action is before the undersigned on the parties' cross-motions for summary judgment. Docket No. 53, 64. The motions are briefed and ready for disposition. After reviewing the record and the briefs, the undersigned recommends that defendant Akinyele's motion be for summary judgment be granted and the complaint be dismissed. Plaintiff's motion for summary judgment should be denied. Plaintiff's claim against defendant Frank Strada should be dismissed.

## I. BACKGROUND

Plaintiff Luis Diaz, an inmate currently confined at Trousdale Turner Correctional Center (TTCC or Trousdale), filed this fee-paid, pro se action, alleging defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Diaz alleges he was denied medical treatment for his foot condition on August 17, 2021, and on two occasions between August 23 and September 1, 2021, while housed at TTCC. He names as defendants Emmanuel Akinyele, a former family nurse practitioner at TTCC, in his individual capacity, and Frank Strada, TDOC Commissioner, in his official capacity only. Docket No. 14, p. 15.

Diaz alleges the following in his amended complaint. Docket No. 14. He was born with

club feet1 (congenital talipes equinovarus)) and now suffers from "flat foot"2 (pes planus) in his right foot. Id., pp. 12-13. An orthopedist recommended surgery for the condition, but he could not have it because he was incarcerated. Id., p. 13. At a prior place of incarceration, he received treatment for his condition in the form of custom arch supports, a gel heel cap, and orthopedic shoes. Id. He also received narcotic and non-narcotic medicine, such as corticosteroids, and was offered steroid injection for his knee. Id. He was also examined by an offsite orthopedist every two weeks. Id.

Diaz arrived at Trousdale in 2016. Id. In October 2020, he twisted his right foot and felt excruciating pain. Id., p. 5. The injury exacerbated his condition, and the pain for three to five minutes at a time prevented him from walking. Id. He would sometimes attempt to ease the pain by using a cane or stuffing his shoes with toilet paper, clothing material, and other things. Id. pp. 5-7.

He submitted medical requests, which went unanswered. Id., p. 5. A correctional officer eventually asked him why he was limping, and Diaz explained. Id., pp. 5-6. The officer told medical that Diaz needed attention. Id., p. 6. On December 31, 2020, x-rays of his foot were taken, and the results were negative. Id. He continued to experience pain and submit medical

---

[1] Clubfoot (talipes equinovarus) is a deformity in which the baby's foot or feet turn inward. Clubfoot is a common congenital condition. About 1 out of every 1,000 newborns will have clubfoot. Clubfoot happens because of an issue with the child's tendons which are shorter and tighter in the leg and foot than they should be. ttps://my.clevelandclinic.org/health/diseases/16889-clubfoot (last visited March 24, 2026)

[2] Pes planus means having flat feet, or one flat foot, with little-to-no arch in the sole. It may be congenital, or the feet may have lost their natural arches due to a medical condition. If arches never develop, or if they collapse later in life, flat feet can cause pain or other problems with walking. https://my.clevelandclinic.org/health/diseases/flat-feet-pes-planus (last visited March 24, 2026).

requests. Id.

On August 17, 2021,[3] he received a pass to see Nurse Akinyele for blood pressure and other screening. Id. A fellow inmate transported him to the infirmary in a wheelchair because his foot was in pain. Id. He explained his condition to Nurse Akinyele and attempted to give him a medical request form on this issue, but Nurse Akinyele he refused to accept it. Id. Nurse Akinyele stated to him, "the chart says you do not have an injury. I know everything about your foot medical history. Don't you forget that. Even if I order a test that reveals an injury, I cannot do anything, and they are not going to do anything about it either." Id., p. 7. He requested medicine, but Nurse Akinyele told him that he had to buy it himself from commissary. Id. Diaz explained that prescription medicine worked much better than the over the counter (OTC) medicine from the commissary, by Nurse Akinyele insisted that he had to buy it himself. Id., p. 8. Nurse Akinyele told him to remove his shoe and sock and asked if there was any bruising or swelling. Id. Diaz said, "a little bit," and before he could get his sock off, Nurse Akinyele said, "you'll be OK." Id. Diaz asked for crutches or another mobility aid, and Nurse Akinyele refused, stating "We can't just give things to everybody just because they say they need it." Id.

Between August 23 and September 1, 2021, Nurse Akinyele conducted two sick calls at the facility, but on both occasions, he refused to speak with Diaz or accept his sick call request forms. Id., p. 9. At the first sick call, Nurse Akinyele stated to another inmate who was present that Diaz was "faking it." Id. On September 2, 2021, Nurse Akinyele conducted another sick call and asked Diaz why he kept coming back; Diaz responded that he had an injury and was in pain. Nurse Akinyele then stated, "I am sending you to see Dr. Owen so you will stop bothering me." Id. p. 9. Diaz alleges he was still being denied pain treatment as of May 15, 2023. Id., p. 15.

---

[3] The correct date of this visit appears to be August 12, 2021. Docket No. 59, p. 10.

On initial review, the district judge concluded Diaz stated a claim against Nurse Akinyele for deliberate indifference to serious medical needs for the alleged denial of medical treatment for Diaz's right foot on August 17, 2021, and twice thereafter.  Docket No. 15, p. 6.  The district judge concluded Diaz's claim for injunctive relief against Commissioner Strada in his official capacity should remain so that a state official with authority to provide the requested injunctive relief is a party to the action in the event Diaz demonstrates he is entitled to it.  Id. pp. 7-8.

The instant cross motions for summary judgment followed.  Docket Nos, 53, 64. In support of his motion, Nurse Akinyele submitted his own sworn declaration and that of Warden Allen Beard, excerpts of medical records, and TDOC administrative policy regarding management of pharmaceuticals. Docket No. 55, pp. 57-59  Diaz filed a cross motion, submitting his own sworn declaration; the sworn declarations of inmates Michael Halliburton, Dale Vinson Merritt, and John Vine; and copies of his medical records from March 2014 to March 2022. Docket No. 64-2.

The evidence submitted by the parties reveals the following. Diaz was born with club foot for which he has undergone corrective surgery. He has since been diagnosed with flat foot, a postural deformity.  Docket No. 64-2, p. 84.

On August 12, 2021, Nurse Akinyele saw Diaz as part of the facility's Chronic Disease Clinic for high cholesterol and hypertension, at which time Diaz reported that he was still having some discomfort in his right foot dating back to September 2020. Docket No. 59, p. 10. He reported he had been taking pain medications from the commissary but had not yet taken it that morning before the visit. Id. Nurse Akinyele noted x-rays of Diaz's right foot from December 31, 2020, were unremarkable, that there was no swelling or skin discoloration around Diaz's right foot, and that he walked with a steady gait. Id. Nurse Akinyele concluded there was no apparent injury to Diaz's foot. Id. He attested in his declaration that Diaz declined medication during the August 12,

2021, examination. Docket No. 57, p. 2. Nurse Akinyele determined that additional treatment for Diaz's reported foot pain was not required at that time. Id. He instructed Diaz to follow up for blood pressure review in two weeks and to follow up in the Chronic Disease Clinic in 180 days. Id.

On September 2, 2021, Diaz submitted a sick call request for his right foot, which stated, "I have an injury in the right foot. I believe I tore a tissue or ligament. Can you conduct the appropriate test. The injury causes me periodical pain." Docket No. 59, p. 12. Nurse Akinyele examined Diaz that same day, noting his history of right foot problems, that x-rays from December 2020 were negative, that there was no swelling, that Diaz walked with a steady gait, and that there was no apparent injury. Id., p. 13. Nurse Akinyele attested that he did not order corrective devices for Diaz's right foot or prescription pain medication because he did not believe that they were warranted at that time. Docket No. 57, p. 3. He further attested he did not restrict Diaz's access to OTC medications that were available from the commissary. Id. Nurse Akinyele ordered follow-up with Dr. Owen for a reevaluation of his right foot pain in 1-2 weeks. Docket No. 59, p. 13.

On October 13, 2021, Diaz saw Nurse Akinyele again at a sick call request for teeth cleaning, at which time he made no complaints about his right foot pain or requests for further evaluation of his right foot. Docket No. 59, p. 15.

Michael Halliburton attested in his declaration that over the years he has seen Diaz's right flat foot. Docket No. 64-2, p. 2. He has seen Diaz insert things into his shoes to use as insoles. Id. He has seen Diaz suddenly stop walking or be required to sit down due to inability to walk, and his foot would sometimes drag to the side, even with the use of a cane. Id. Diaz sometimes told him he was in constant pain and his face looked distressed. Id. He saw Diaz crying because of the pain. Id. Diaz's foot condition was well known in the facility among the inmates and staff.

Halliburton attested that one day in August 2021, he saw Diaz getting into a wheelchair and that fellow inmate Dale Merritt was going to push him to the clinic. Id. p. 3. It was obvious Diaz needed medical attention. Id.

Dale Merritt attested that since October 2020 he had seen Diaz in distress and rubbing his foot. Docket No. 64-2, p. 5. On one occasion at a sick call, Nurse Akinyele told him that Diaz was faking his injury. Id. Nurse Akinyele also once told him he was going to refer Diaz to another doctor so that he would stop bothering him. Id. On one occasion he witnessed Nurse Akinyele refuse Plaintiff's sick call requests. Id. In mid-August 2021, he saw Diaz limping, and it was obvious he was in "agony." Id. Merritt believed Diaz could permanently injure his foot if he continued walking and immediately obtained a wheelchair to transport him to the clinic. Id. He observed swelling of Diaz's foot around that time and Diaz stated he was in pain that day. Id. On September 2, 2021, Merritt observed Diaz was again visibly limping and walking slowly due to pain. Id.

Nurse Akinyele contends that the evidence demonstrates that Diaz cannot establish either the objective or subjective component for a deliberate indifference claim. Docket No. 53, p. 2. He argues Diaz cannot establish that his alleged foot pain constituted an objectively serious medical need during the relevant period or that he consciously disregarded an excessive risk to his health. Id. Nurse Akinyele contends Diaz's claim amounts to nothing more than disagreement with the medical attention that he provided, which is insufficient to establish a deliberate-indifference-to-medical-needs claim under the Eighth Amendment. Id.

In his cross motion, Diaz counters that the evidence meets both the objective and subjective criteria for a deliberate indifference claim and that his claim is not a mere disagreement with medical attention. Docket No. 64, p. 2. He argues the court should deny Nurse Akinyele's motion

6

and enter judgment in his favor.  Id.

## II.  DISCUSSION

### A.	Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when there is sufficient evidence for a trier of fact to find for the non-moving party." *Ciminillo v. Streicher*, 434 F. 3d 461, 464 (6th Cir. 2006).  The court must view the facts and draw reasonable inferences in the light most favorable to the party opposing the motion.  *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962)). "When opposing parties tell two different stories, [however,] one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, [we need] not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380, 127 S.Ct. 1769.

### B.	Deliberate Indifference to Medical Needs Claim

The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). But allegations of mere negligence or inadvertence in the diagnosis or treatment of a medical condition will not suffice. *Id.* at 105–06.  A constitutional violation arises only when the provider exhibits "deliberate indifference to a prisoner's serious illness or injury," *Id.* at 105, 97 S. Ct. 285 (emphasis added), that can be characterized as "obduracy and wantonness" rather than "inadvertence or error in good faith," *Wilson v. Seiter*, 501 U.S. 294, 299 (1991), (quoting *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)).

Deliberate indifference has both an objective and a subjective component, requiring "proof

7

that the inmate had a sufficiently serious medical need and that a municipal actor knew of and disregarded an excessive risk to the inmate's health or safety." *North v. Cuyahoga Cty.,* 754 F. App'x at 385, *citing Winkler v. Madison Cty.*, 893 F. 3d 877, 890-91 (6th Cir. 2018). The objective component "requires that the inmate have a sufficiently serious medical need such that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.*, *quoting Ford v. County of Grand Traverse* , 535 F. 3d 483, 495 (6th Cir. 2008) (internal quotation marks omitted). A medical need that has been diagnosed by a physician as "mandating treatment" is a sufficiently serious medical need. *Id.* The subjective component requires that officials had a "sufficiently culpable state of mind" of "deliberate indifference to inmate health or safety." *Id.*, *quoting Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted).

Deliberate indifference requires more than negligence but does not require proof that the officials intended to cause harm. *Winkler*, 893 F. 3d at 891. The plaintiff must demonstrate facts which, if true, "would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded the risk." *Rouster v. Cty. of Saginaw*, 749 F. 3d 437, 446 (6th Cir. 2014) (cleaned up). "When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Id.* at 447, *quoting Comstock v. McCrary*, 273 F. 3d 693, 703 (6th Cir. 2001).

### 1. Objective Component

The parties dispute the first component, whether Diaz's flat feet constitute an objectively serious medical condition. An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would

perceive the need for a doctor's attention." *Jones v. Muskegon Cty.*, 625 F. 3d 935, 941 (6th Cir. 2020) (quotation omitted). Several factors can indicate a serious condition: that "the failure to treat a prisoner's condition could result in further significant injury," that the "medical condition [ ] significantly affects an individual's daily activities," or that the inmate is experiencing "chronic and substantial pain." *Hayes v. Snyder*, 546 F. 3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F. 3d 1364, 1373 (7th Cir. 1997)).

The parties have not provided, nor have the undersigned found, authority from this Circuit analyzing an instance of flat feet under the objectively serious standard. Some district courts presented with the issue have reserved judgment, instead finding the subjective element of deliberate indifference lacking. *See e.g., McCutcheon v. Sood*, 2000 WL 528481, at *5 (N.D. Ill. Apr. 26, 2000); *Rogers v. Garnett*, 2005 WL 2260869, at *3 (S.D. Ill. Sept. 16, 2005).

Other district courts, however, have found instances of flat feet and other similar ailments to lack the requisite seriousness. *See e.g., Abney v. McGinnis*, 2007 WL 844675, at *1-3 (S. D. N. Y. Mar. 16, 2007) (plaintiff's medical condition which included hammer toes, bunions, collapsed arches, unerect heels, and laterally drifted big toes was not serious; "while painful," the condition was not "one of urgency that may produce death, degeneration, or extreme pain.") (*quoting Hathaway v. Coughlin*, 37 F. 3d 63, 66 (2d Cir. 1994)); *Brown v. Defrank*, 2006 WL 3313821, at *21 (S. D. N. Y. Nov. 15, 2006) (bunions); *Hernandez v. Goord*, 2006 WL 2109432, at *1, 5-6 (S. D. N. Y. July 28, 2006) (hammertoe); *Veloz v. New York*, 35 F. Supp. 2d 305, 312 (S. D. N. Y. 1999) (fracture, bone cyst, and degenerative arthritis in toe); *but see Paul v. Bailey*, 2013 WL 2896990, *3 (S. D. N. Y. June 13, 2013)(while plaintiff's condition (flat feet) was not life-threatening, it could be appropriately described as chronic and sufficiently serious to constitute a serious medical need for the purposes of establishing an Eighth Amendment claim arising out of inadequate

9

medical care.); *Johnson v. Medford*, 208 F. Supp. 2d 590, 592 (W. D. N. C.), aff'd, 37 F. App'x 622 (4th Cir. 2002) (at the motion to dismiss stage, neither "fallen arches" or "flat feet" suggest a serious medical condition.). Thus, mild cases of flat feet, for example, where the plaintiff is still able to exercise and perform many activities of daily living, may not constitute an objectively serious medical condition.

For purposes of this opinion, the undersigned will assume seriousness or that Diaz's flat feet could significantly affect his daily activities or lead to chronic and substantial pain and proceed to the second component.

### 2. Subjective Component

The subjective element of the claim then considers whether the record evidence demonstrates that Nurse Akinyele acted wantonly, with deliberate indifference to Diaz's serious medical needs. *Grissom v. Davis*, 55 Fed. Appx. 756, 757 (6th Cir. 2003). The undersigned concludes that it does not.

Instead, the evidence shows Nurse Akinyele examined Plaintiff's foot on two occasions in a three-week period and noted no issues on both occasions. On the first visit on August 12, 2021, Nurse Akinyele noted earlier X-rays were unremarkable, that there was no swelling or skin discoloration, that Diaz walked with a steady gait, and that he refused medication. After Diaz submitted a sick call request on September 2, 2021, Nurse Akinyele examined him that same day, again noting x-rays were negative, that Diaz walked with a steady gait, that there was no apparent injury, and that Diaz should be scheduled for follow-up with Dr. Owen in one to two weeks. To the extent Diaz complains about Nurse Akinyele's brusqueness, gruff demeanor, and dismissive attitude, the evidence nonetheless demonstrates Nurse Akinyele did not in fact ignore his medical and health needs. The evidence thus does not establish that Akinyele knew of and disregarded an

10

excessive risk to Diaz's health, necessary to satisfy the deliberate indifference standard.

To the extent that Diaz asserts that Nurse Akinyele told him that he needed to purchase his own OTC medication from the commissary rather than having it prescribed, this does not constitute deliberate indifference. *See Lee v. Hatcher*, 2016 WL 5467948, at *3 (M.D. Tenn. Sept. 29, 2016) (advising inmate to purchase OTC medication from the commissary, rather than continually dispensing it to him for free, does not constitute deliberate indifference in the absence of a showing that inmate lacks funds to purchase the medication."). Moreover, Nurse Akinyele attested that he determined that Diaz did not require corrective devices for his right foot or prescription pain medication because he did not believe they were warranted based on his medical judgment at the time. Docket No. 57, p. 3. Finally, CoreCivic policy makes certain approved OTC medications available to inmates for purchase from the commissary, and staff at Trousdale can require an inmate purchase such medications from the commissary provided the inmate is not indigent. Docket No. 58-1, pp. 2, 4. *Nichols v. Centurion*, 2022 WL 1721452, at *4 (E.D. Tenn. May 27, 2022) (without an "indigent" designation, and in accordance with TDOC policy, inmate plaintiff was required to purchase his OTC medications from the commissary); *Slattery v. Mohr*, 2012 WL 2931131, at *8 (S.D. Ohio July 17, 2012) (holding that inmate who was forced to purchase OTC medications from the commissary pursuant to TDOC policy did not establish an Eighth Amendment violation where he failed to demonstrate that he was denied medical care due to his inability to afford medication). In sum, because he was not indigent, Diaz cannot sustain an Eighth Amendment claim based on allegations that Nurse Akinyele did not prescribe him pain medication and told him he needed to purchase OTC medication from the commissary.

To the extent Diaz complains that the follow-up appointment with Dr. Owen ordered by Nurse Akinyele did not take place within the recommended 1-2 weeks, this argument fails. Nurse

11

Akinyele attested that he was not responsible for scheduling the follow-up appointment, that although he noted that Diaz should be scheduled for follow-up with Dr. Owen, he was not responsible for ensuring that the follow-up took place, and that he was not aware that Diaz did not see Dr. Owen for follow-up within the recommended timeframe. Docket No. 57, pp. 1-3. Additionally, Nurse Akinyele saw Diaz again on October 13, 2021, at a sick call request for teeth cleaning, at which time Diaz made no complaints about his right foot pain or requests for further evaluation of his right foot. Docket No. 59, p 15.

The record shows Diaz's Eighth Amendment claim thus amounts to a disagreement with the medical attention he received from Nurse Akinyele in connection with his complaints of foot pain. *See Green v. Correct Care Solutions*, 2016 WL 1578841, at *7 (M.D. Tenn. March 25, 2016) (Eighth Amendment guarantees that a prisoner will receive adequate medical care, not the medical care of his choice). Indeed, "the Eighth Amendment does not require prison medical providers to provide inmates with unqualified access to health care. An inmate is entitled to adequate medical care, not the best care possible." *Rhinehart v. Scutt*, 894 F. 3d 721, 750 (6th Cir. 2018). Additional or different medical treatment does not "by itself suffice to support an Eighth Amendment claim." *Anthony v. Swanson*, 701 Fed. Appx. 460, 464 (6th Cir. 2017). Diaz thus cannot establish the subjective component of his deliberate indifference to medical needs claim.

Based on the above, the undersigned recommends summary judgment be granted in Nurse Akinyele's favor on Plaintiff's deliberate indifference to medical needs claims.

### III.  CONCLUSION

Consistent with the above, the undersigned recommends that defendant Emmanuel Akinyele's motion for summary judgment (Docket No. 53) be granted and Plaintiff's motion for summary judgment be denied. (Docket No. 64.) In light of the above holding, Plaintiff Diaz's

claims against Defendant Frank Strada in his official capacity should be dismissed.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**