IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| LUIZ DIAZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 3:23-cv-00236 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| EMMANUEL AKINYELE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER

Pending before the Court[1] is the report and recommendation (Doc. No. 80, "R&R") of the

Magistrate Judge, which recommends that (1) the motion for summary judgment of Defendant

Emmanuel Akinyele (Doc. No. 53, "Defendant Akinyele's Motion for Summary Judgment") be

granted and the complaint be dismissed; (2) that Plaintiff's motion for summary judgment (Doc.

No. 64, "Plaintiff's Motion for Summary Judgment") be denied; and (3) that Plaintiff's claim

against the (only) other defendant, Frank Strada, be dismissed.[2] (Doc. No. 80 at 1). No objections

to the R&R have been filed and the time for filing objections has now expired.[3]

---

[1] Herein, "the Court" refers to the undersigned District Judge, as opposed to the Magistrate Judge who authored the R&R.

[2] The Magistrate Judge (i) opined that the grant of summary judgment to Defendant Akinyele by itself should result in the dismissal of this *entire action*, which would include any claims against Defendant Strada, and *not* just the claims against Defendant Akinyele; and (ii) separately opined that the claims against Defendant Strada should be dismissed. The Court explains in a footnote below the basis for the first of these opinions. As for the second opinion, it actually strikes the Court as being incorporated into the first opinion; in other words, to say that the claims against Defendant Strada should be dismissed is merely to say that the grant of summary judgment to Defendant Akinyele (for reasons discussed in a footnote below) results in the dismissal of the claims against Defendant Strada (and not just the claims against Defendant Akinyele).

[3] Under Fed. R. Civ. P. 72(b), any party has fourteen (14) days from receipt of the R&R in which to file any written objections to the Recommendation with the District Court. For *pro se* plaintiffs, like Plaintiff, the Court is willing to extend this 14-day deadline by three days to allow time for filings to be transported

Absent any objection to the background section (regarding the factual background and procedural history of this case) set forth by the Magistrate Judge in the R&R, the Court adopts that section in its entirety and includes it here for reference (including the footnotes thereto appended by the Magistrate Judge to this statement, which are footnotes 1-3 in the R&R and reproduced as footnotes 4-6 herein):

I. BACKGROUND

Plaintiff Luis Diaz, an inmate currently confined at Trousdale Turner Correctional Center (TTCC or Trousdale), filed this fee-paid, pro se action, alleging defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Diaz alleges he was denied medical treatment for his foot condition on August 17, 2021, and on two occasions between August 23 and September 1, 2021, while housed at TTCC. He names as defendants Emmanuel Akinyele, a former family nurse practitioner at TTCC, in his individual capacity, and Frank Strada, TDOC Commissioner, in his official capacity only. Docket No. 14, p. 15.

Diaz alleges the following in his amended complaint. Docket No. 14. He was born with club feet[4] (congenital talipes equinovarus)) and now suffers from "flat foot"[5] (pes planus) in his right foot. *Id.*, pp. 12-13. An orthopedist recommended surgery for the condition, but he could not have it because he was incarcerated. *Id.*, p. 13. At a prior place of incarceration, he received treatment for his condition in the form of custom arch supports, a gel heel cap, and orthopedic shoes. *Id.* He also received narcotic and non-narcotic medicine, such as corticosteroids, and was offered steroid injection for his knee. *Id.* He was also examined by an offsite orthopedist every two weeks. *Id.*

by mail. But even this extension does not help Plaintiff, because the R&R was filed on April 17, 2026, and as of May 7, 2026, Plaintiff has not filed any objections.

[4] Clubfoot (talipes equinovarus) is a deformity in which the baby's foot or feet turn inward. Clubfoot is a common congenital condition. About 1 out of every 1,000 newborns will have clubfoot. Clubfoot happens because of an issue with the child's tendons which are shorter and tighter in the leg and foot than they should be. [h]ttps://my.clevelandclinic.org/health/diseases/16889- clubfoot (last visited March 24, 2026)[.]

[5] Pes planus means having flat feet, or one flat foot, with little-to-no arch in the sole. It may be congenital, or the feet may have lost their natural arches due to a medical condition. If arches never develop, or if they collapse later in life, flat feet can cause pain or other problems with walking. https://my.clevelandclinic.org/health/diseases/flat-feet-pes-planus (last visited March 24, 2026).

Diaz arrived at Trousdale in 2016. Id. In October 2020, he twisted his right foot and felt excruciating pain. *Id.*, p. 5. The injury exacerbated his condition, and the pain for three to five minutes at a time prevented him from walking. Id. He would sometimes attempt to ease the pain by using a cane or stuffing his shoes with toilet paper, clothing material, and other things. *Id.* pp. 5-7.

He submitted medical requests, which went unanswered. *Id.*, p. 5. A correctional officer eventually asked him why he was limping, and Diaz explained. *Id.*, pp. 5-6. The officer told medical that Diaz needed attention. *Id.*, p. 6. On December 31, 2020, x-rays of his foot were taken, and the results were negative. Id. He continued to experience pain and submit medical requests. *Id.*

On August 17, 2021,[6] he received a pass to see Nurse Akinyele for blood pressure and other screening. *Id.* A fellow inmate transported him to the infirmary in a wheelchair because his foot was in pain. *Id.* He explained his condition to Nurse Akinyele and attempted to give him a medical request form on this issue, but Nurse Akinyele he refused to accept it. *Id.* Nurse Akinyele stated to him, "the chart says you do not have an injury. I know everything about your foot medical history. Don't you forget that. Even if I order a test that reveals an injury, I cannot do anything, and they are not going to do anything about it either." *Id.*, p. 7. He requested medicine, but Nurse Akinyele told him that he had to buy it himself from commissary. *Id.* Diaz explained that prescription medicine worked much better than the over the counter (OTC) medicine from the commissary, by Nurse Akinyele insisted that he had to buy it himself. *Id.*, p. 8. Nurse Akinyele told him to remove his shoe and sock and asked if there was any bruising or swelling. *Id.* Diaz said, "a little bit," and before he could get his sock off, Nurse Akinyele said, "you'll be OK." *Id.* Diaz asked for crutches or another mobility aid, and Nurse Akinyele refused, stating "We can't just give things to everybody just because they say they need it." *Id.*

Between August 23 and September 1, 2021, Nurse Akinyele conducted two sick calls at the facility, but on both occasions, he refused to speak with Diaz or accept his sick call request forms. *Id.*, p. 9. At the first sick call, Nurse Akinyele stated to another inmate who was present that Diaz was "faking it." *Id.* On September 2, 2021, Nurse Akinyele conducted another sick call and asked Diaz why he kept coming back; Diaz responded that he had an injury and was in pain. Nurse Akinyele then stated, "I am sending you to see Dr. Owen so you will stop bothering me." *Id.* p. 9. Diaz alleges he was still being denied pain treatment as of May 15, 2023. *Id.*, p. 15.

On initial review, the district judge concluded Diaz stated a claim against Nurse Akinyele for deliberate indifference to serious medical needs for the alleged denial of medical treatment for Diaz's right foot on August 17, 2021, and twice thereafter. Docket No. 15, p. 6. The district judge concluded Diaz's claim for

---

[6] The correct date of this visit appears to be August 12, 2021. Docket No. 59, p. 10.

injunctive relief against Commissioner Strada in his official capacity should remain so that a state official with authority to provide the requested injunctive relief is a party to the action in the event Diaz demonstrates he is entitled to it. *Id.* pp. 7-8.

The instant cross motions for summary judgment followed. Docket Nos, 53, 64. In support of his motion, Nurse Akinyele submitted his own sworn declaration and that of Warden Allen Beard, excerpts of medical records, and TDOC administrative policy regarding management of pharmaceuticals. Docket No. 55, pp. 57-59 Diaz filed a cross motion, submitting his own sworn declaration; the sworn declarations of inmates Michael Halliburton, Dale Vinson Merritt, and John Vine; and copies of his medical records from March 2014 to March 2022. Docket No. 64-2.

The evidence submitted by the parties reveals the following. Diaz was born with club foot for which he has undergone corrective surgery. He has since been diagnosed with flat foot, a postural deformity. Docket No. 64-2, p. 84.

On August 12, 2021, Nurse Akinyele saw Diaz as part of the facility's Chronic Disease Clinic for high cholesterol and hypertension, at which time Diaz reported that he was still having some discomfort in his right foot dating back to September 2020. Docket No. 59, p. 10. He reported he had been taking pain medications from the commissary but had not yet taken it that morning before the visit. *Id.* Nurse Akinyele noted x-rays of Diaz's right foot from December 31, 2020, were unremarkable, that there was no swelling or skin discoloration around Diaz's right foot, and that he walked with a steady gait. *Id.* Nurse Akinyele concluded there was no apparent injury to Diaz's foot. *Id.* He attested in his declaration that Diaz declined medication during the August 12, 2021, examination. Docket No. 57, p. 2. Nurse Akinyele determined that additional treatment for Diaz's reported foot pain was not required at that time. *Id.* He instructed Diaz to follow up for blood pressure review in two weeks and to follow up in the Chronic Disease Clinic in 180 days. *Id.*

On September 2, 2021, Diaz submitted a sick call request for his right foot, which stated, "I have an injury in the right foot. I believe I tore a tissue or ligament. Can you conduct the appropriate test. The injury causes me periodical pain." Docket No. 59, p. 12. Nurse Akinyele examined Diaz that same day, noting his history of right foot problems, that x-rays from December 2020 were negative, that there was no swelling, that Diaz walked with a steady gait, and that there was no apparent injury. *Id.*, p. 13. Nurse Akinyele attested that he did not order corrective devices for Diaz's right foot or prescription pain medication because he did not believe that they were warranted at that time. Docket No. 57, p. 3. He further attested he did not restrict Diaz's access to OTC medications that were available from the commissary. *Id.* Nurse Akinyele ordered follow-up with Dr. Owen for a reevaluation of his right foot pain in 1-2 weeks. Docket No. 59, p. 13.

On October 13, 2021, Diaz saw Nurse Akinyele again at a sick call request for teeth cleaning, at which time he made no complaints about his right foot pain or requests for further evaluation of his right foot. Docket No. 59, p. 15.

Michael Halliburton attested in his declaration that over the years he has seen Diaz's right flat foot. Docket No. 64-2, p. 2. He has seen Diaz insert things into his shoes to use as insoles. *Id.* He has seen Diaz suddenly stop walking or be required to sit down due to inability to walk, and his foot would sometimes drag to the side, even with the use of a cane. *Id.* Diaz sometimes told him he was in constant pain and his face looked distressed. *Id.* He saw Diaz crying because of the pain. *Id.* Diaz's foot condition was well known in the facility among the inmates and staff.

Halliburton attested that one day in August 2021, he saw Diaz getting into a wheelchair and that fellow inmate Dale Merritt was going to push him to the clinic. Id. p. 3. It was obvious Diaz needed medical attention. *Id.*

Dale Merritt attested that since October 2020 he had seen Diaz in distress and rubbing his foot. Docket No. 64-2, p. 5. On one occasion at a sick call, Nurse Akinyele told him that Diaz was faking his injury. *Id.* Nurse Akinyele also once told him he was going to refer Diaz to another doctor so that he would stop bothering him. *Id.* On one occasion he witnessed Nurse Akinyele refuse Plaintiff's sick call requests. *Id.* In mid-August 2021, he saw Diaz limping, and it was obvious he was in "agony." *Id.* Merritt believed Diaz could permanently injure his foot if he continued walking and immediately obtained a wheelchair to transport him to the clinic. *Id.* He observed swelling of Diaz's foot around that time and Diaz stated he was in pain that day. *Id.* On September 2, 2021, Merritt observed Diaz was again visibly limping and walking slowly due to pain. *Id.*

Nurse Akinyele contends that the evidence demonstrates that Diaz cannot establish either the objective or subjective component for a deliberate indifference claim. Docket No. 53, p. 2. He argues Diaz cannot establish that his alleged foot pain constituted an objectively serious medical need during the relevant period or that he consciously disregarded an excessive risk to his health. *Id.* Nurse Akinyele contends Diaz's claim amounts to nothing more than disagreement with the medical attention that he provided, which is insufficient to establish a deliberate-indifference-to-medical-needs claim under the Eighth Amendment. *Id.*

In his cross motion, Diaz counters that the evidence meets both the objective and subjective criteria for a deliberate indifference claim and that his claim is not a mere disagreement with medical attention. Docket No. 64, p. 2. He argues the court should deny Nurse Akinyele's motion and enter judgment in his favor. *Id.*

(Doc. No. 80 at 1-7). The Magistrate Judge concluded that (1) Defendant Akinyele's Motion for

Summary Judgment (Doc. No. 53) should be granted and the complaint be dismissed; (2) that

Plaintiff's Motion for Summary Judgment (Doc. No. 64) should be denied; and (3) that Plaintiff's claim against Defendant Strada in his official capacity should be dismissed. (Doc. No. 80 at 1).

No party has filed objections to the R&R, and the time to file objections with the Court has passed, as explained in a footnote above.

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district judge must review *de novo* any portion of the report and recommendation to which a proper objection is made. Fed. R. Civ. P. 72(b)(3). The district judge may accept, reject, or modify the recommended disposition, review further evidence, or return the matter to the magistrate judge with instructions. *Id.* Fed. R. Civ. P. 72(b)(2) provides that a party may file "specific written objections" to a report and recommendation, and Local Rule 72.02(a) provides that such objections must be written and must state with particularity the specific portions of the magistrate judge's report or proposed findings or recommendations to which an objection is made.

The failure to object to a report and recommendation releases the Court from its duty to independently review the matter. *Frias v. Frias*, No. 2:18-CV-00076, 2019 WL 549506, at *2 (M.D. Tenn. Feb. 12, 2019); *Hart v. Bee Prop. Mgmt., Inc.*, No. 18-CV-11851, 2019 WL 1242372, at * 1 (E.D. Mich. Mar. 18, 2019) (citing *Thomas v. Arn*, 474 U.S. 140, 149 (1985)). A district judge is not required to review, under a *de novo* or any other standard, those aspects of a report and recommendation to which no objection is made. *Ashraf v. Adventist Health Sys./Sunbelt, Inc.*, 322 F. Supp. 3d 879, 881 (W.D. Tenn. 2018); *Benson v. Walden Sec.*, No. 3:18-CV-00010, 2018 WL 6322332, at *3 (M.D. Tenn. Dec. 4, 2018) (citing *Thomas*, 474 U.S. at 150).

Absent objection, the R&R (Doc. No. 80) is adopted and approved. Accordingly, Plaintiff's Motion for Summary Judgment (Doc. No. 64) is **DENIED**, but Defendant Akinyele's Motion for

Summary Judgment (Doc. No. 53) is **GRANTED**, resulting in the complaint being dismissed in its entirety.[7]

The Clerk is directed to enter judgment under Rule 58 and close the file.

IT IS SO ORDERED.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[7] Although the Court is under no obligation to independently review the R&R (given there was no objection to the R&R), the Court elects to briefly explain why it finds it proper to dismiss the first amended complaint (Doc. No. 14, "First Amended Complaint") in its entirety. In the First Amended Complaint, Plaintiff brings an Eighth Amendment claim against Defendant Akinyele and sues Defendant Strada only seeking injunctive relief. (*Id.*). In the Court's initial screening and review of the action (Doc. No. 15), the Court indicated that Plaintiff may proceed with his Eighth Amendment claim against Defendant Akinyele, and that although Plaintiff may proceed with his claim for injunctive relief against Defendant Strada, such claim only remains "so that a state official with authority to provide the requested injunctive relief is a party to this case *in the event that Plaintiff demonstrates an entitlement to it*." (Doc. No. 15 at 8 (emphasis added)).

Defendant Akinyele's Motion for Summary Judgment requested only that the Court "enter summary judgment on the Eight Amendment claim asserted against *him*" (i.e., Defendant Akinyele). (Doc. No. 53 at 1 (emphasis added)). However, the claim against Defendant Strada was (as just noted) entirely dependent upon the existence of an entitlement to relief based on claims *against someone other than Defendant Strada*, which in this case would have to be Defendant Strada's sole co-defendant, Defendant Akinyele. And as noted herein, Defendant Akinyele's Motion for Summary Judgment will be granted, absent objection to the R&R. Therefore, the claim for injunctive relief against Defendant Strada should likewise be dismissed because there is no entitlement to relief based on claims against someone other than Defendant Strada. Therefore, the Court finds that dismissal of the entire action is appropriate—i.e., all claims against Defendant Akinyele and Defendant Strada—based (primarily) on the grant of summary judgment to Defendant Akinyele.